Filed 9/25/14  P. v. Parrish CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>AQUILLA PARRISH et al.,<br><br>Defendants and Appellants. | C069281<br><br>(Super. Ct. No. 09F08653) |

Defendant Aquilla Parrish and her daughter, Quilla Parrish, were charged by information with grand theft in violation of Penal Code section 487, subdivision (a) (statutory references that follow are to the Penal Code) arising from their scheme to fraudulently obtain money from the CalWORKS and In Home Health Services programs. Ultimately, each entered a no contest plea to one count of a violation of section 487, subdivision (a) with the agreement that the remaining counts would be dismissed and the court would order full restitution to the County of Sacramento.  As to Quilla, the People

1

also agreed that it would not pursue charges arising from an investigation into an unrelated case.

Defendants appeal arguing that each received the ineffective assistance of counsel for their respective attorneys' failure to advise them that prosecution of one of the counts that had been dismissed may have been barred by the relevant statute of limitations and the attorneys' failure to challenge that count on those grounds.

We reverse and remand the matter for further proceedings.

FACTS AND PROCEEDINGS

Aquilla and Quilla were charged by information as follows:

In Count One, the People charged that, between May 1, 2002 and April 30, 2003, by means of fraudulent representation and pretense, Aquilla and Quilla stole $23,199.40 from the CalWORKS program which was the property of the Sacramento County Department of Human Assistance, in violation of section 487, subdivision (a).

In Count Two the People charged that, between April 1, 2003 and April 30, 2006, Quilla and Tyree Deshawn White, by means of fraudulent representation and pretense, stole $69,450.69 from the CalWORKS program which was the property of the Sacramento County Department of Human Assistance, in violation of section 487, subdivision (a).

In Count Three, the People charged that, between August 15, 2006 and November 14, 2007, Quilla and Larry Darnell Beverly, by means of fraudulent representation and pretense, stole $35, 958.37 from the CalWORKS program which was the property of the Sacramento County Department of Human Assistance, in violation of section 487, subdivision (a).

In Count Four of the information, the People charged that, between August 17, 2007 and March 25, 2008, by means of fraudulent representation and pretense, Aquilla and Quilla stole $3,166.80 from the In Home Support Services program which was the

2

property of the State of California and the County of Sacramento, in violation of section 487, subdivision (a).

In Count Five of the information, the People charged that, between March 26, 2008 and November 16, 2009, by means of fraudulent representation and pretense, Aquilla and Quilla stole $46,445.36 from the In Home Support Services program which was the property of the State of California and the County of Sacramento, also in violation of section 487, subdivision (a).

Finally, in Count Six, the People charged that, on October 20, 2008, Quilla violated section 532(a) in that she unlawfully, knowingly, designedly and fraudulently gained possession of money, property, labor, and service of another.

On May 20, 2011, Aquilla entered a plea of no contest to Count Five of the information and waived her rights pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*) in return for the People's agreement to dismiss, as to her, Counts One and Four of the information and the parties' further agreement that Aquilla would be sentenced to state prison for a period of two years and would be subject to a restitution order arising from all three of the counts in which she was named.

Also on May 20, 2011, Quilla entered a plea of no contest to Count Five and waived her *Harvey* rights in return for an agreement to dismiss, as to her, Counts One, Two, Three, Four, and Six and the parties' further agreement that Quilla would be sentenced to state prison for a period of three years, subject to a restitution order based on all counts and that the People would no longer pursue and would not charge Quilla with other crimes then under investigation.

On September 9, 2011, the court heard and denied each defendant's motion to withdraw her no contest plea and sentenced defendants as follows:

The court denied Aquilla probation and sentenced her to state prison for a term of two years. Among other orders, Aquilla was ordered to pay, jointly and severally with Quilla, restitution to the County of Sacramento in the amount of $23,199.40, the loss

alleged in Count One, and $49,612.16 to the County of Sacramento, the losses alleged in Counts Four and Five.

The court also denied Quilla probation and sentenced her to state prison for a term of three years. Among other orders, Quilla was ordered to pay, jointly and severally with her various codefendants, restitution to the County of Sacramento in the amount of $23,199.40, the loss alleged in Count One, $49,612.16, the losses alleged in Counts Four and Five, $69,440.69, approximately the loss alleged in Count Two, $35,958.37, the loss alleged in Count Three, and, to the individual victim in Count Six, $5,625.

Having obtained certificates of probable cause, defendants appeal.

DISCUSSION

Because we are able to resolve the issues raised in this appeal without a detailed recitation of the facts underlying the crimes alleged in the information, we will relate them only briefly here.

According to the probation reports, regarding Counts One, Two, and Three, between May 1, 2002 and November 14, 2007, Quilla obtained $128, 608.46 from the CalWORKS program by falsely claiming that her mother, Aquilla, and her other codefendants, were providing her child care while she was attending school. During this period, she was not attending school. Regarding Counts Four and Five, between August 17, 2007 and November 16, 2009, Quilla obtained $49, 612.16 from the In Home Support Service program by falsely claiming Quilla was severely disabled and required her mother's assistance in order to live safely in her home. As to Count Six, Quilla was responsible for failure to pay the rent for a home she had rented from a private party.

4

# I

## *Ineffective Assistance of Counsel*

Both defendants raise a single issue for us to consider on appeal, arguing that each received ineffective assistance of counsel for their attorneys' failure to assert a defense to Count One based upon the expiration of the statute of limitations as to that count or to advise them of that defense prior to entering their no contest pleas. They claim that, had they known the prosecution of Count One was barred by the statute of limitations, they would not have entered into the plea agreements that they did, that their pleas of no contest were not knowing, intelligent and voluntary and that, therefore, they are entitled to withdraw their pleas of no contest.

The People agree that the matter should be remanded to the trial court for further proceedings to determine whether the prosecution under Count One was barred by the statute of limitations, tacitly conceding that defendants did not receive effective assistance of counsel in entering their pleas pursuant to the negotiated settlement.

As set forth above, Count One of the information charged that, between May 1, 2002 and April 30, 2003, Aquilla and Quilla fraudulently obtained $23,199.40 from the CalWORKS program by falsely claiming that Quilla was attending school and that Aquilla was providing care to Quilla's children, thus violating section 487, subdivision (a).

Section 801.5 sets forth the statute of limitations for this offense and provides that a "prosecution for any offense described in subdivision (c) of Section 803 shall be commenced within four years after discovery of the commission of the offense, or within four years after the completion of the offense, whichever is later." (§ 801.5.) Section 803, subdivision (c)(1) lists "grand theft of any type" as coming within its provisions. (§ 803, subd. (c)(1).) Thus the prosecution of these defendants for the theft alleged in

5

Count One of the information had to be commenced within four years of discovery, or completion, of the offense, whichever was later.

At the time the information was filed charging Count One, a prosecution was deemed commenced when (a) an indictment or information was filed; (b) a complaint was filed charging a misdemeanor or infraction; (c) a case was certified to the superior court; or (d) an arrest warrant or bench warrant was issued, provided the warrant named or described the defendant with the same degree of particularity required for an indictment, information, or complaint. (Former § 804.)

The complaint in this matter was deemed an information and the information was filed November 4, 2010 after both appellants waived a preliminary hearing. Count One alleges that the offense set forth therein was completed on April 30, 2003 and, unless the statute was tolled by late discovery of the offense, the prosecution had to commence not later than April 30, 2007. On the face of the complaint at least, prosecution of the offense described in Count One was time-barred by the time the prosecution commenced on November 4, 2010, more than seven years after the offense was complete.

In *People v. McCary* (1985) 166 Cal.App.3d 1 (*McCary*) the defendant was charged with sodomy of a child under the age of 14 (§ 286, subd. (c)), and three acts of lewd and lascivious conduct with a child under the age of 14 (§ 288, subd. (a)), among other charges. Defendant was also charged with a serious felony enhancement under section 667, subdivision (a). Just before trial began, defendant pleaded guilty to two of the counts alleging a violation of section 288 (a) (lewd and lascivious conduct) in return for a dismissal of the remaining counts and the serious felony enhancement. At the time of the plea, the People explained that they were willing to dismiss the other charges to spare the victim and because the People had "evidentiary problems" with the sodomy count, specifically that the doctor who examined the victim was of the opinion she had not been sodomized.

Subsequently, defendant moved to withdraw his plea, explaining that he had been under extreme emotional distress at the time of the plea and that he had not been previously aware of the physician's opinion that the child victim had not been sodomized. The motion was denied.

On appeal, defendant argued that he had suffered ineffective assistance of counsel. This court agreed on the grounds that, at the time of his plea, due to a change in the law, defendant was not subject to the five year serious felony enhancement. His attorney was either unaware of or failed to inform defendant of that prior to his plea. We said that the serious felony enhancement added five years to a minimum possible term of imprisonment of three years for a total minimum term of eight years as opposed to three years. We held that counsel's failure to know or to convey to the defendant the fact that he was not subject to the five-year enhancement before he entered his plea did not meet the standard of a reasonably competent attorney and that defendant was prejudiced thereby.

We found that defendant's ignorance of the invalidity of the enhancement was a factor bearing on whether defendant's plea was based on mistake, ignorance or inadvertence which affected defendant's free and clear judgment. We said: "In pleading guilty and receiving a dismissal of the enhancement, defendant avoided the possibility of having his sentence increased by a mandatory five years over a minimum possible three years. Furthermore, the record suggests the plea bargain was not highly attractive to defendant in the first place, for he moved for withdrawal on grounds unrelated to the enhancement and while still unaware of its invalidity. Moreover, the sodomy charge was dismissed for certain evidentiary problems of which defendant was made aware prior to pleading. Accordingly, it can be fairly concluded the promise to dismiss the enhancement charge was a substantial inducement in defendant's decision to plead guilty. Since the enhancement charge was invalid to begin with, the promise to dismiss it was of no value." (*McCary*, *supra*, 166 Cal.App.3d at p. 10; see also *People v. Johnson* (1995)

36 Cal.App.4th 1351 [ineffective assistance of counsel where defendant agreed to a 20-year term after his counsel told him his maximum term was 38 years when it was, in fact, 27 years].)

The same result must obtain here. On this record, there is no indication that counsel for the defendants researched the statute of limitations issue relating to Count One nor does the record reflect any challenge to Count One on those grounds. While a conviction on Count One would have added only eight months to the maximum sentence, defendants' terms to state prison were for two and three years. We cannot say that, had they known they were not subject to the additional eight-month sentence they would not have insisted on a more favorable agreement. Moreover, if it turns out that Count One is barred by the statute of limitations, the restitution order arising from that count cannot stand. In sum, counsels' " 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' (*Strickland* [*v. Washington* (1984) 466 U.S. 668, 688] [80 L.Ed.2d [674,] 693-694]; accord, [*People v.*] *Pope* [(1979)] 23 Cal.3d [412], 423-425.)" (*People v. Ledesma* (1987) 43 Cal.3d 171, 216.) Defendants were prejudiced thereby.

Finally, in these circumstances, "the appellate court must look to see if the record contains any explanation for the challenged aspect of representation. If it does, the court must inquire whether the explanation demonstrates that counsel was reasonably competent and acting as a conscientious, diligent advocate. For example, where the record shows that counsel's omissions resulted from an informed tactical choice within the range of reasonable competence, the conviction must be affirmed. (Citation omitted.) In contrast, where the record shows that counsel has failed to research the law or investigate the facts in the manner of a diligent and conscientious advocate, the conviction should be reversed since the defendant has been deprived of adequate assistance of counsel. (Citation omitted.)" (*People v. Pope* (1979) 23 Cal.3d 412, 425-426.)

8

We can discern no reasonable tactical decision not to challenge Count One as being beyond the limits of the relevant limitations period. While one might speculate that counsel did investigate into this issue and found that discovery of the fraudulent conduct tolled the statute for a time sufficient to bring the prosecution within the period set forth in section 801.5, that would have us looking for a reasonable tactical decision based on pure speculation rather than looking for a reasonable explanation based on facts contained in the record of trial which we may not do.

On this record, defendants were not afforded the effective assistance of counsel and the matter must be returned to the trial court.

II

*The Remedy*

While the parties appear to agree that defendants did not receive the effective assistance of counsel, they do not agree on the remedy. Defendants say the matter must be returned to the trial court where the defendants may withdraw their plea. The People say that, given the discovery provisions of section 801.5, the matter should be returned to the trial court for that court to determine, at least initially, whether discovery of the crime alleged in Count One came within the four year limitation period. We think the latter is the appropriate remedy here. It may be, given a challenge to Count One on limitations grounds, the People will be able to show that Count One was not barred by the statute of limitations. In that event, defendants' pleas must stand. If the People cannot make that showing, defendants are entitled to withdraw their pleas and the prosecution will proceed from there. (See *People v. Lynch* (2010) 182 Cal.App.4th 1262, 1275-1277.) If the People can make that showing, defendants' motion to withdraw their pleas should again be denied.

9

DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.


                                                                _____HULL_____, Acting P. J.




We concur:




_____MURRAY_____, J.




_____DUARTE_____, J.